UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 14-39-HRW

BILLIE W. HAMM, *et al.*,                                                                             PLAINTIFFS,

v.                 **MEMORANDUM OPINION AND ORDER**

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,                                                DEFENDANT.

This matter is before the Court upon Defendant's Motion for Summary Judgment [Docket No. 35]. The motions have been fully briefed [Docket Nos. 34, 35-1, 36 and 38]. For the reasons set forth herein, the Court finds that Defendant is entitled to judgment as a matter of law.

**I.**

This case arises from a fire which resulted in the destruction of the mobile home belonging to Plaintiffs Billie and Lisa Hamm. The mobile home, located at 60-5 Rose Fork, Olive Hill, Kentucky served as their personal residence. According Mr. Hamm, when the fire started, Plaintiff Lisa Hamm and their three children were out shopping while Plaintiff he was at home cooking the family dinner. [Deposition of Billie Hamm, p. 40]. He describes the fire as a "grease fire" which ignited while he was cooking. *Id.*, p.69. He tried unsuccessfully to quell the fire, first with water from the kitchen sink, and then with an exterior water hose. *Id.*, pp. 76-77. Unable to put out the fire, he rushed to his next door neighbor's house, kicked in their door and used their phone to call 911 for assistance. *Id.*, pp. 76, 78 and 80. It took an hour for the first fire department vehicle to arrive and when it did, it ran out of water and could not extinguish the fire. *Id.*, pp.86-89.

At the time of the fire, Plaintiffs were insured by Defendant American Bankers Insurance

Company of Florida ("ABIC"). Specifically, ABIC issued a Homeowners Plus Program Policy No. HPL0139078 ("the Policy"0 to Billie Hamm, with a policy period from May 13, 2012 to May 13, 2013. [Docket No. 35-2]. The Policy provides coverage for up to $111,509.00 for the dwelling and $56,000.00 for personal property. The Policy defines "limits of liability" as:

> the maximum amount we are required to pay in the event of a covered loss. Although amounts paid for a loss may be less than the limit of liability, in no event will the payment exceed such limit of liability, unless specifically stated within the policy.

*Id.*, at 2.

The Policy also described the insureds' duties in the event of a loss:

> Your Duties After Loss.
> In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
> . . .
> c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory.
> d. as often as we reasonably require:
> (1) exhibit the damaged property;
> (2) provide us with records and documents we request and permit us to make copies; and
> (3) submit to examination under oath.
> e. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
> . . .
> (6) an inventory of damaged personal property described in 2c;

*Id.*

Shortly after the fire, Mr. Hamm met with an adjuster for ABIC. [Deposition of Billie

Hamm, pp. 220 and 231]. ABIC then began its investigation of Plaintiffs' claim and concluded that the mobile home unit could not be repaired and, accordingly, paid plaintiffs the Policy limits for the dwelling. [ABIC insurance payment checks, Docket No. 35-4]. ABIC also paid plaintiffs $1,600.00 to reimburse them for additional living expenses they incurred as a result of the fire. *Id.*

Although the Policy for personal property limit was $56,000.00, Plaintiffs' claimed approximately $77,316.00. Pursuant to the policy's requirements, ABIC requested that they "[l]ist each damaged item along with the original date and place of purchase, and proof of ownership." Plaintiffs submitted what purported to be an inventory of their losses in mid-May of 2013 [Docket No. 35-6]. However, Defendant states that the Plaintiffs did not provide any information about where the allegedly damaged items were purchased, when they were purchased and the payment method for the items, even through ABIC's plainly requested that they do so and the Personal Property Inventory form ABIC provided included clearly labeled fields for plaintiffs to provide such information.

ABIC again requested that Plaintiffs provide additional information to show proof of ownership, including through the submission of receipts or documents showing dates of purchase, and ABIC also issued a letter reserving its rights under the Policy [Docket No. 35-8]. Plaintiffs did not comply with this request for documents and records and, instead, notified ABIC that they had retained counsel who also did not provide the requested information to ABIC [Docket No. 35-9].

Over the next few months, ABIC continued to investigate the personal property claim, again requesting specific information from Plaintiffs, to-wit:

> All documentation of cost of purchase, receipts, cancelled checks, photographs, invoices, credit card statements, replacement cost, or

3

> estimates of value or any other documentation, of whatever nature showing ownership, value of purchase price of any of the items lost in the fire.
> . . .
> Transaction and balance records from all banking, checking or other accounts and all charge card accounts maintained by [plaintiffs] from January 2012 through April 2013
> . . .
> Completed and signed personal property inventory forms for all personal property lost or damaged in the fire loss.

[Docket No. 35-10].

In response to this request, Plaintiffs provided a handful of photographs and receipts for only a few of the hundreds of items that they claimed were lost in the fire.

Pursuant to the Policy, Plaintiffs provided sworn testimony pertaining to the claim. Their testimony revealed several discrepancies; for example, in their Bankruptcy Petition, Plaintiffs testified that the value of their personal property, including their living room suite, bedroom suite, TV and computer was only $400. Yet, for what was apparently the same bedroom suite, they assigned a value of $6,350.00 in connection with their claim to ABIC. Even more confusing is Ms. Hamm's unambiguous testimony that the bedroom suite had been in their possession for twelve years.

Further, although a good potion of the purchases made by Plaintiffs were made online, through vendors such as Ebay and Fingerhut, which, presumably, retain records which should have been readily accessible to Plaintiffs. However, they failed to provide ABIC with documentation from eBay, Fingerhut, or their banks and credit card companies. Indeed, ABIC had to issue non-party subpoenas to receive such documentation in the course of this lawsuit.

Notably, it was revealed that not only had Plaintiffs failed to provide ABIC with the records ABIC had requested, they had not attempted to do so. Mr. Hamm testified:

> Q: Did you try and get your Capital One statements?
> A: No, I didn't. And they said something about it and I still had

4

>forgotten about it.
>Q: I'm sorry.
>A: I can still call them. I need to do that.
>**Q: But you haven't taken any step to call them?**
>**A: No.**
>Q: You believe that you could have gotten the statements, you just haven't done that yet?
>A: Correct.
>....
>Q: Okay. Moving on to paragraph six, transaction and balance records from all banking, checking or other accounts, and all charge card accounts maintained by your clients. That's you and Ms. Hamm, correct?
>A: Correct.
>**Q: From January 2012 through April 2013. What steps did you take to comply with this request?**
>**A: We didn't get them.**
>**Q: You didn't get them?**
>**A: No.**
>**Q: You didn't try to get them?**
>**A: No**

[Docket No. 35-7, pp. 116, 117, 199 and 200](emphasis added).

Without plaintiffs' substantiation, ABIC argues that it lacked information to properly evaluate and consider Plaintiffs' claim for damages in excess of the policy limits.

Subsequently, Plaintiffs filed this lawsuit against ABIC asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, violation of the Kentucky Consumer Protection Act, and statutory and common law "bad faith."

Thereafter, ABIC issued a Policy limit payment of $56,000.00 to Plaintiffs for their personal property claim.

ABIC seeks summary judgment, arguing that Plaintiffs cannot prove essential elements of their breach of contract claim and, therefore, cannot withstand summary judgment; it further asserts that their remaining extra-contractual claims therefore also fail as a matter of law.

## II.

In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex v. Cartett*, 477 U.S. 317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56©, the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

The United States Court of Appeals for the Sixth Circuit has interpreted the United States Supreme Court's trilogy as requiring the nonmoving party to produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

## III.

Under Kentucky law, "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *Great American Ins. Co. of New York v. Brock Const. Co., Inc.*, No Civ. A. 05-569-KKC, 2007 WL 2844945, at *2 (E.D. Ky. Sept. 28, 2007) (quoting *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). Therefore, to establish that Policy has been breached by ABIC, Plaintiffs must provide evidence which establishes: (1) existence of a contract; (2) breach of

that contract; and (3) damages flowing from the breach of that contract. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007).

The existence of a contract, in this case, the Policy, is not in dispute. Nor do the parties dispute that ABIC has paid Plaintiffs the policy limits for dwelling coverage ($111,509.00) and personal property ($56,000.00) as well as additional payments of $1,600.00 for additional living expenses and $1,800.00 to reimburse them for debris removal.

Defendant argues that it has fully performed its obligations pursuant to the contract and, as such, there has been no breach. Further, Defendant contends that Plaintiffs have no evidence to support their claim to $72,000.00 in contract damages.

Although Plaintiffs' do not explicitly deny that they did not provide complete information regarding their loss to ABIC, they maintain that a jury could still find a breach of contract because ABIC did not pay the policy limits sooner. In support of their argument, Plaintiffs cite the "Loss Payment" provision of the Policy, which states that "Loss will be payable in 30 days after we receive proof of loss and: a. reach an agreement with you; or b. there is an entry of final judgment, or c. there is a filing of an appraisal award." [Docket No. 35-1].

Plaintiffs' argument obscures the fact that they tarried, significantly, in providing ABIC with adequate proof of their losses. There is no Policy term that required ABIC to pay plaintiffs within thirty days when plaintiffs refused to substantiate the amount of their claim in the first place. To the contrary, with respect to proving the loss, the Policy plainly and unambiguously sets forth certain "Duties After Loss" for an insured and clearly describes the requirements for "proof of loss," with explicit reference to "related documents that substantiate the figures" claimed.

Plaintiffs offer no plausible explanation for their refusal to prove their claim and, instead, attempt to shift their burden of proof to ABIC. However, this Court has flatly rejected an attempt to shift the burden or avoid an insured"s duty to supply documentation to support his or her claim. *See*

7

*Brock Constr. Co.*, 2007 WL 2844945. In *Brock*, Chief Judge Karen Caldwell noted, "[t]he purpose of a cooperation clause is to enable the insurer to obtain relevant information concerning the loss while the information is fresh, to enable it to decide upon its obligations, and to protect itself from fraudulent and false claims." *Id.* at 908-909 (quoting COUCH ON INS. § 199.4). Where an insured refuses to cooperate with requests for documents, the Court held that an insured cannot shift the burden of a claim investigation solely to the insurer. Instead, the Court emphasized that the insured is in the best position to provide requested documents:

> [The insured] does not dispute that he did not produce all of the requested documents. **He instead argues that Great American could have used the broad financial release that [the insured] signed to obtain the records on its own, without [his] assistance.** However, attempting to pass responsibility to Great American to obtain needed records, as Brock essentially did with this release, is not cooperation. **The policy unquestionably requires the insured to cooperate with the claim investigation. Great American requested specific documents, and [the insured] failed to produce them when he was clearly able to do so. [The insured], not Great American, is in the better position to obtain these documents; authorizing a broad release of documents is not sufficient cooperation where specific documents are requested that are easily capable of being produced by their holder.**

*Id.* (emphasis added).

The Court concluded that the insured had failed to show that there is a genuine issue for trial on this matter. Thus, no genuine issue of material fact remained and Great American was entitled to summary judgment as to the breach of contact claim. *Id.*

As in *Brock*, despite ABIC's repeated requests through written correspondence for records and documents to substantiate this claim (both before and after Plaintiffs filed this lawsuit), Plaintiffs failed to perform the Policy's conditions precedent that they provide "receipts and related documents that substantiate the figures in the inventory" and provide ABIC with "records and documents we request" (which included an explicit request for "documentation, of whatever nature, showing ownership, value or purchase price of any of the items lost in the fire"). As Judge Caldwell

8

concluded in *Brock,* this scenario warrants summer judgment in favor of the insurer.

Plaintiffs have not established that ABIC breached the contract. The Policy obligates ABIC to make a payment only when certain conditions are met. As relevant to this case, the Policy obligated ABIC to pay plaintiffs' personal property claim only if they provided "an inventory of damaged personal property," with "all bills, receipts and related documents that substantiate the figures in the inventory" any other "records and documents [ABIC] request[ed]." As set forth above, it is undisputed that plaintiffs did not provide documents readily available to them. Thus, in the absence of plaintiffs' cooperation, the Policy does not establish any time period for issuing payment. Any alleged "delay" in payment by ABIC cannot give rise to a breach of contract claim.

As for Plaintiffs' allegations of bad faith and appurtenant statutory violations, the Supreme Court of Kentucky has held that "[a]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Davidson v. Am. Freightways, Inc.,* 25 S.W.3d 94, 100 (Ky.2000). As the Court has determined that ABIC did not breach the terms of the contract, the bad-faith claims fails as a matter of law

IV.

ABIC has paid plaintiffs Policy Limits, despite plaintiffs" refusal to comply with the conditions precedent under the Policy. Because plaintiffs have failed to produce evidence to support a breach of contract or any resulting damages, ABIC is entitled to summary judgment.

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Docket No. 35] be SUSTAINED.

This 7th day of September, 2016.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge